**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

PAUL NORRIS, JR.                                                       PETITIONER
ADC #144669,

v.                                      5:14CV00193-BSM-JJV

RAY HOBBS, Director,
Arkansas Department of Correction                      RESPONDENT

**<u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>**

**<u>INSTRUCTIONS</u>**

The following recommended disposition has been sent to Chief United States District

Judge Brian S. Miller.   Any party may serve and file written objections to this

recommendation.  Objections should be specific and should include the factual or legal basis

for the objection.  If the objection is to a factual finding, specifically identify that finding and

the evidence that supports your objection.  An original and one copy of your objections must

be received in the office of the United States District Court Clerk no later than fourteen (14)

days from the date of the findings and recommendations.  The copy will be furnished to the

opposing party.  Failure to file timely objections may result in waiver of the right to appeal

questions of fact.

If you are objecting to the recommendation and also desire to submit new, different,

or additional evidence, and to have a new hearing for this purpose before either the District

Judge or Magistrate Judge, you must, at the time you file your written objections, include the

following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I.      BACKGROUND

On May 5, 2009, a Saline County jury convicted, Petitioner, Paul Anthony Norris, Jr., of capital murder, two counts of aggravated robbery, and first-degree battery. (Doc. No 5-2.) For his capital murder conviction, Mr. Norris was sentenced to life imprisonment without parole;  for each count of aggravated robbery, he was sentenced to 300 months; and for his first-degree battery conviction, Mr. Norris was sentenced to 240 months in the Arkansas Department of Correction, with all the sentences to be served consecutively. (Doc. No. 5.)

Mr. Norris, represented by J. Brent Standridge, Esq., then timely appealed his conviction to the Arkansas Supreme Court. He raised two points on appeal: (1) the circuit court erred in denying his motion for a directed verdict on the capital murder and aggravated robbery charges; and (2) the circuit court erred in refusing his proffered jury instructions

involving imperfect self-defense and negligent homicide. *Norris v. State,* 2010 Ark. 174, 368

S.W.3d 52 (*Norris I*). In its April 15, 2010 opinion, the Arkansas Supreme Court affirmed

the trial court; and on May 20, 2010, the state's highest court denied rehearing. *Id.*

The Arkansas Supreme Court summarized the facts underlying Mr. Norris's

conviction and sentence as follows:

> Alex Ragan testified at trial that he and neighbor Derrick Kellems attempted
> to purchase marijuana on September 5, 2008. Ragan spoke with Charles Moore
> over the telephone, who directed Ragan to meet with an individual named
> "Creo." Ragan and Kellems later drove with Creo to a house where Creo went
> inside with Ragan's money to purchase marijuana but never returned. Kellems
> eventually went inside the house but failed to locate Creo.
>
> Ragan then called Charles Moore, who told Ragan that he would get his "guys
> together" to help get the money back. To this end, Moore told Ragan to call
> appellant Norris. Ragan and Kellems drove to meet Norris, who was waiting
> outside his grandmother's house with an individual named Tim Jackson, and
> they subsequently picked up another friend of Norris, Justin Gatewood. Norris
> then directed Ragan to drive to an abandoned house. Upon arrival, Ragan,
> Norris, Jackson, and Gatewood went into the house through the front door,
> eventually exiting through the back in what Ragan believed at the time was a
> search for Creo; Kellems went directly around to the back of the house. Ragan
> testified that after he emerged from the house and stood next to Kellems,
> Norris approached from inside the house and suddenly delivered a single blow
> to Kellems's head with a two-by-four. Norris then struck Ragan in the head
> with the two-by-four. Ragan stated that Norris's attack was unprovoked and a
> surprise, because they were "suppose[d] to be friends."
>
> After receiving Norris's blow to his head, Ragan was attacked by Jackson and
> Gatewood while attempting to get to his car to make a call from his cell phone.
> Ragan testified that Gatewood punched him and demanded money from him,
> and that Norris then approached from the direction of the house and similarly
> demanded money after grabbing him. After he was punched several more
> times, Ragan testified that Norris, Jackson, and Gatewood began searching his
> car for money and told Ragan to "go help your buddy."
>
> According to Ragan's testimony, Kellems was "stumbling around," had
> difficulty speaking, and "there was blood all over his face." As Ragan tried to

assist Kellems to the car, Kellems lay down on a cushion and whispered for Ragan to go get help. Ragan drove home where his wife insisted he go to the hospital. Detectives arrived at the hospital and Ragan gave them directions to Kellems's location to the best of his knowledge. Benton Police Department Officer Jimmy Thompson located Kellems near the abandoned house and transported him to the hospital. Thompson's search of Kellems's person revealed neither a wallet nor a weapon. Although Ragan testified that Kellems had a "set of pliers or something whenever he was at the house that Creo stole the money," Ragan stated that he never saw Kellems with the Leatherman multi-tool in his hand at the abandoned house, nor did he see Kellems wield it at the abandoned house.

Kellems died on September 21, 2008, sixteen days after he was transported to the hospital. Forensic pathologist Dr. Stephen Erickson testified that Kellems died from complications resulting from trauma to the skull and brain and ruled the death a homicide. Dr. Erickson compared the force of the blow to Kellems's skull as the equivalent of someone "swinging for the fence."

Ragan later identified Norris as his and Kellems's assailant from a photographic line-up. Investigation by the Benton Police Department indicated that Norris and/or his family once lived in the abandoned house. A two-by-four was found at the house along with various items belonging to Ragan and Kellems; their wallets, however, were not recovered.

Following his arrest, Norris provided a videotaped statement to the Benton Police Department in which he acknowledged that he was aware that Ragan and Kellems "had been robbed" earlier in the day, but got into Ragan's car ostensibly to help search for Creo. Norris told Benton police that he "was already kind of heated" when he got into the car and directed Ragan to drive to the abandoned house, and that after they arrived at the house "we was acting like we were looking for Creo." Further, Norris admitted to Benton police that he struck Kellems once with the two-by-four hard enough that "it sounded like it was somebody swinging a baseball bat."

*Id.* at 3-5.

On July 2, 2010, Mr. Norris filed a *pro se* petition for postconviction relief pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure. (Doc. No. 5-7.) In it, Mr. Norris claimed his counsel was ineffective for a multitude of reasons. The State filed its response,

and on July 23, 2010, Mr. Norris filed an amended petition that alleged the same grounds for relief as the first petition had. (Doc. No. 5.)

On August 18, 2010, the Saline County Circuit Court denied Mr. Norris postconviction relief and also held that because the amended petition merely recited the allegations made in the original petition, it would not be considered. (Doc. No. 5-10.)  Mr. Norris appealed the decision, and on May 16, 2013, the Arkansas Supreme Court affirmed the trial court's denial of the Rule 37 petition. *Norris v. State,* 2013 Ark. 205 (*Norris II.)*

Mr. Norris timely filed the instant habeas Petition on May 15, 2014, claiming  his counsel was constitutionally ineffective for the following reasons: (1)failure  to investigate the brain injuries that Ragan suffered and that those injuries severely affected his ability to remember events that happened the night of the incident; (2) failure to explore the cause of Kellems's death - specifically arguing that it was Ragan's delay rather than the actual injuries sustained by Kellems; (3) failure to call Justin Gatewood and Tim Jackson as witnesses who would have testified that Norris was acting in self-defense, was unarmed, and was not attempting to rob Ragan and Kellems; (4) failure to emphasize to the jury the importance of a pretrial statement and whether or not Norris was the aggressor or only acting in self defense; (5) failure to explore the possibility that Ragan and Kellems were under the influence of methamphetamine when the incident occurred; and (6) "trial counsel labored under a conflict of interest" because counsel's wife was the Office Manager of the Saline County Prosecutor's Office and she took an active part on the case; (7) the evidence was insufficient to support his convictions and (8) he was denied due process and his right to a

fair trial by the court's refusal to instruct the jury on imperfect self defense. (Doc. No. 1 at 6-15.)

Respondent filed a Response (Doc. No. 5) and the matter is ripe for a decision. For the foregoing reasons, the Court recommends Mr. Norris's Petition should be dismissed.

## II.    ANALYSIS

### A.    Exhaustion of Claims

As a prerequisite to reaching the merits of a federal habeas petition, a federal court "must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997). In order to satisfy the requirement that he fairly present his habeas claims in state court, a petitioner must have "refer[red] to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 48 F.3d 1094, 1096 (8th Cir. 2007) (quoting *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997)). The Supreme Court of the United States has held that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). *See also Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

Mr. Norris has properly advanced only three of his ineffective assistance of counsel claims through the state courts. His federal Petition raises new claims not previously addressed. Mr. Norris's second, fourth and fifth claims - that his attorney was ineffective for not exploring the actual cause of Kellems's death; for failure to emphasize to the jury the importance of Ragan's pre-trial statements; and for not exploring the possibility that Kellems and Ragan were under the influence of methamphetamine the night of the incident- are being presented for the first time in the instant Petition. (Doc. No. 5 at 7.) These claims were neither raised in his Rule 37 Petition nor on appeal. Accordingly, only those constitutional issues raised in his Rule 37 Petition and appealed to the Arkansas Supreme Court are properly before this Court.

However, where procedural default has occurred, federal habeas review is permitted if the petitioner can demonstrate (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice, that is, that a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). After careful review, the Court concludes that Mr. Norris fails to show any cause and prejudice, and does not allege actual innocence.

Although questions arise whether the United States Supreme Court's holding in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), could generally lead to a showing of "cause" for procedural defaulted claims, the Court concludes it would not apply in this case. Assuming *Martinez* applies, this Court would perform a merits review of the defaulted claims if (1) the

claim of ineffective assistance was substantial, (2) the "cause" was that Mr. Norris had no

counsel in the postconviction proceeding, (3) the Rule 37 proceeding was the initial review

proceeding with respect to the ineffective assistance of counsel claim, and (4) it was highly

unlikely that Mr. Norris had a "meaningful opportunity" to raise his ineffective assistance

claims on direct appeal. *Trevino v. Thaler*, 133 S.Ct. 1911 (2013). Here, Mr. Norris's claims

fail on the first prong of the analysis. Given the facts in this case and the claims raised, the

Court concludes that none of the defaulted claims rise to the level of "substantial."

## B.    Limited Federal Review of Claims Adjudicated in State Court

"In the interests of finality and federalism," federal habeas courts, under the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are restricted to a

"limited and deferential review of underlying state court decisions." *Sera v. Norris*, 400 F.3d

538, 542 (8th Cir. 2005); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Under the

AEDPA, federal review of underlying state court decisions is limited because federal courts

may only grant habeas relief if the claim was adjudicated on the merits in the state court

proceeding, and the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law, as determined by the Supreme
> Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); see also *Rompilla v. Beard*, 545 U.S. 374, 380 (2005).

Under subsection (d)(1), a state court decision is "contrary to" federal law if the state

court arrived "at a conclusion opposite to that reached by [the Supreme Court] on a question

of law or if the state court decides a case differently than the [United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007).  A decision involves an unreasonable application of federal law when the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413.  Under subsection (d)(2), a state court decision involves an unreasonable determination of the facts in light of the evidence presented "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003) (citations omitted).

Moreover, interpretation and application of state law are not subject to habeas corpus review since federal habeas corpus relief does not lie for errors of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Lupien v. Clarke*, 403 F.3d 615, 619 (8th Cir. 2005) (citing *Bounds v. Delo*, 151 F.3d 1116, 1118 (8th Cir. 1998) ("Determinations of state law made by a state court are binding on a federal court in habeas proceedings").  Thus, questions of state law that have been decided by a state court are simply not reviewable, "even under the deferential standard of 28 U.S.C. § 2254(d)." *Lupien v. Clarke*, 403 F.3d 615, 619 (8th Cir. 2005) (quoting *Lee v. Gammon*, 222 F.3d 441, 443 (8th Cir. 2000)).  Of course, a factual issue would be susceptible to limited review by the habeas court.  *See* 28 U.S.C. § 2254(e)(1).[1]  However, it is not the duty of the federal habeas court to "reexamine state-

---

[1]State court factual findings are "presumed to be correct," and this presumption can be rebutted only by clear and convincing evidence.  28 U.S.C. § 2254(d).

court determinations on state-law questions." *Id.* A federal court conducting a habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).

      1.    Ineffective Assistance of Counsel

The Arkansas Supreme Court correctly identified the governing federal law for ineffectiveness claims as *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* establishes a two-element test for ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland,* 466 U.S. at 687.

Following *Strickland*, the Arkansas Supreme Court correctly held that there was no showing of ineffective assistance of counsel in Mr. Norris's case. *Norris II*, 2013 Ark. 205. After careful review of the Petition and Response, the Court concludes that the state court's conclusion did not entail an unreasonable application of federal law. In reviewing an ineffective assistance claim under the "unreasonable application" clause of § 2254(d)(1), "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (quoting

*Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

The Arkansas Supreme Court reasonably applied *Strickland* to the facts of Mr. Norris's case.  Even if Mr. Norris could show his counsel was deficient, Mr. Norris is unable to show the requisite prejudice. As such Mr. Norris's claims that his counsel was ineffective for failing to explore the brain injuries that Ragan suffered, which allegedly controlled memory functions; for failing to call Justin Gatewood and Tim Jackson as witnesses; and the defense attorney's conflict of interest have all been properly presented and adjudicated in state court. The Arkansas Supreme Court held, "as appellant failed to meet his burden of establishing an actual conflict that prejudiced him, the trial court did not err in denying relief on his claim." *Norris II*, 2013 Ark. 205 at 9.

In all cases, the burden of proof to establish a *Strickland* violation is on the petitioner, and conclusory allegations of ineffectiveness do not warrant relief. *E.g., Deltoro -Aguilera v. United States,* 625 F.3d 434, 438 (8th Cir. 2010); *Hollis v. United States,* 796 F. 2d 1043, 1046 (8th Cir. 1996). Mr. Norris has not met his burden and the Arkansas Supreme Court rendered a well-reasoned opinion that was not an unreasonable application of clearly established federal law; therefore his Petition should be dismissed.

2.      Remaining Claims

Mr. Norris's  challenge  to the sufficiency of the evidence to support a state court conviction is not cognizable in a federal habeas corpus petition.  A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a);

*see also* Rule 1(a)(1) of the Rules Governing Section 2254 Cases in the United States District Courts.  Claims based on errors of state law are not cognizable in federal habeas petition. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).  Whether a state court complied with state law in its criminal proceedings is purely a matter for the state courts and is not reviewable by a federal court under the due process clause. *Cox v. Hutto,* 589 F.2d 394, 395 (8th Cir. 1987.)  Habeas courts do not sit to review state law claims.  *See Meyer v. Sargent,* 854 F.2d 1110, 1116  (8th Cir. 1988).

Mr. Norris's final claim, that he was denied due process and a fair trial because the trial court refused to give his proffered jury instructions on imperfect self-defense and on the lesser-included offenses of manslaughter and negligent homicide, is without merit. The Petitioner's acknowledges that this Court may "determine that the claim is not preserved for federal habeas review because it was raised only under state court law" and "submits alternatively that defense counsel and appellate counsel were ineffective for failing to 'federalize' the claim." (Doc. No. 1 at 17.)

This Court gives great deference to the Arkansas Supreme Court and finds that its holding was neither contrary to nor an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1).  Nor was it based on an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. §2254(d)(2).  Accordingly, Mr. Norris's Petition for Writ of Habeas Corpus is DISMISSED.

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases

in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order.  In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2).  The Court finds no issue on which Mr. Norris has made a substantial showing of a denial of a constitutional right. Thus, the certificate of appealability should not be issued.

**IV.    CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that:

1.       Mr. Norris's Petition for Writ of Habeas Corpus (Doc. No. 1) be DISMISSED with prejudice and the requested relief be DENIED.

2.       A certificate of appealability be denied.

DATED this 14th day of October, 2014.

_____
JOE J.  VOLPE
UNITED STATES MAGISTRATE JUDGE